UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

HARRY HIGHTOWER,            )
                           )
        Petitioner,        )
                           )
    vs.                    )        Case No. 4:01CV1687 RWS/AGF
                           )
LARRY ROWLEY,              )
                           )
        Respondent.        )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the pro se petition of Missouri prisoner Harry

Hightower for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action was

referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b) for recommended

disposition. For the reasons set forth below, the Court recommends that federal habeas

relief be denied.

Petitioner was convicted by a jury in the Circuit Court of Mississippi County,

Missouri, on June 26, 1996, of first-degree robbery, armed criminal action, and first-

degree tampering. He was sentenced as a persistent misdemeanor offender to concurrent

terms of imprisonment of 20 years, 20 years, and five years, respectively. The Missouri

Court of Appeals affirmed Petitioner's convictions and sentences. His motion for post-

conviction relief was denied and this denial was affirmed on appeal. In the present

habeas action, Petitioner claims that his constitutional rights were violated in the

following ways:

(1) There was insufficient evidence to support the convictions;

(2) the trial court plainly erred by permitting the prosecutor to ask the owner of the store that was robbed about a previous robbery of the store in which a clerk, Sammy Harris, was murdered;

(3) the trial court plainly erred by permitting the prosecutor to question Petitioner about the details of Petitioner's prior convictions;

(4) trial counsel rendered ineffective assistance in failing to move for an automatic change of venue; and

(5) trial counsel rendered ineffective assistance in failing to move to strike four venirepersons for cause and/or peremptorily.

Respondent argues that this Court is procedurally barred from considering Claims 2 and 3, and alternatively, that these claims do not warrant habeas relief because the state appellate court's rejection of them was factually and legally reasonable. Respondent asserts that the state appellate court's rejection of Petitioner's first and fourth claims was also reasonable. Respondent does not address Petitioner's fifth claim.

## BACKGROUND

The charges against Petitioner arose out of the October 26, 1995 robbery of two employees of the Town and Country Grocery Store in Charleston, Missouri, after the employees drove up to a bank to make a night deposit. Charleston, Missouri, is in Mississippi County, a county with a population of approximately 15,000 people in 2000.[1] Petitioner was represented at trial by a public defender based in St. Charles County, Missouri, assisted by local counsel from Jackson, Missouri.

---

[1]    factfinder.census.gov

**Voir Dire**

During voir dire, several venirepersons, including venireperson Thomas, stated that they knew about the case and/or were related to or knew various employees of the store that was robbed, but that they could be fair and impartial and make a decision based upon the evidence presented at trial. Resp. Ex. 1 at 58-63. The prosecutor asked the panel whether they knew that the prosecutor was also prosecuting another local case and whether this would affect their ability to sit as impartial jurors in Petitioner's case. The following exchange took place between the prosecutor and Thomas:

> Prosecutor:   . . . Do you know that we're prosecuting the Williamses for the Mike Ivey killing? Is that going to affect the way you look at us here today?
>
> Thomas:   It might. Because Mike Ivey was a friend of mine.
>
> Prosecutor:   Okay. So you're saying that might affect you, but it would affect you in a positive way as it relates to us as opposed to a negative way?
>
> Thomas:   Yes.

Resp. Ex. 1 at 53-54. Neither side moved to strike Thomas and he was seated as a juror.

**Trial**

In affirming Petitioner's convictions, the Missouri Court of Appeals summarized the evidence presented at trial as follows. Petitioner does not suggest that this summary is inaccurate, and the Court's own review of the record indicates that this is a fair portrayal of the evidence.

Town & Country Grocery Store is located in Charleston, Missouri. On the evening of October 26, 1995, an office worker, Robin Slaten, packaged the store's money so it could be taken to First Financial Bank. She prepared two bank bags. She placed cash in a bag she described as "the drop bag" and food stamps and checks in another bag she called "the deposit bag."

Ms. Slaten estimated that the drop bag contained between $3,500 and $3,800 the evening of October 26. The packaged cash [$1, $5, and $10 bills] was wrapped in $100 bundles containing bills of the same denomination. [$20 bills were bundled in $500 bundles, with rubber bands or paper clips, and then two $500 bundles would be bundled together. Ms. Slaten also remembered having four $50 bills in the bag that night].

The night manager who was working the evening of October 26 was Clifton Cossey. He closed the store that evening. He prepared to take the drop bag and the deposit bag to First Financial Bank. The bank was across the street from Town & Country Grocery Store. Mr. Cossey and another employee, Larry Jones, took the bags in Cossey's truck. In accordance with store policy, a third employee, Michael Bankhead, followed them to the bank. When Cossey and Jones pulled into the bank parking lot, a man jumped from behind a wooden barrier that was around a dumpster in the lot. He had a sawed-off shotgun. The man pointed the shotgun at Cossey and Jones and told them to get out of Cossey's truck. He told Cossey to get out or he would shoot. When Cossey and Jones got out of the truck, the man got in the truck and drove off with the bank bags.

About 15 minutes after the robbery occurred, Charleston police officers Anthony Moody and Kelly Brown were sitting in a patrol car when they observed a light blue two-door automobile pass in front of them. The officers watched the car as it approached an intersection. The car ran a stop sign. As the car turned a corner, it was sideways in the road. The officers turned on their red lights and pursued the car until it pulled into a driveway and stopped.

When the car stopped, the driver, later identified as Woodrow Anderson, jumped out of the car and began to walk away. Officer Moody observed a large knife sticking out of Anderson's back pocket. He ordered Anderson to stop and get on the ground. Anderson continued walking. Officer Moody again ordered Anderson to stop and get down on the ground. Anderson complied. Officer

Moody removed the knife from Anderson's back pocket, then brought Anderson back to the vehicle and had him put his hands on the hood of the car.

Officer Brown got out of the patrol car and approached the passenger side of the stopped car. Defendant was in the car. Officer Brown told defendant to get out and put his hands on top of the car. When defendant got out of the car, Officer Brown took hold of one of his arms. Defendant broke loose and ran. Officer Brown chased defendant. He explained, "As I was catching up with him, apparently he fell and ended up in a lot--half of his body was in a lot, tall grass, the other half was in the street. And that's when I caught up with him."

Defendant was arrested and handcuffed. He was taken back to the car. Officer Brown then returned to where defendant had fallen. He found an orange hat and a large amount of cash. Officer Brown explained:

Q. [by the prosecuting attorney] Now, you said you observed an orange cap. Was that [defendant's] cap?
A. Yes, ma'am, it was. He was wearing it during the foot pursuit. It fell off his head as he fell.
Q. Did he have it on his head when he got out of the vehicle?
A. Yes, ma'am, he did.
Q. And you saw him take off running with that hat on?
A. Yes, ma'am, I did.
Q. And when you handcuffed and picked him up, he had lost the hat?
A. Yes, ma'am.
Q. You--Well, exactly how did you find this currency? Do you remember?
A. I--Yes, ma'am, I do remember.
Q. How was it?
A. It was underneath the hat. It was in bundles of $20s, $5s, $10s, et cetera.

The amount of cash recovered with defendant's hat was $1,924. Woodrow Anderson had an additional $1,933 at the time he was arrested. A short time after defendant and Anderson were arrested, police officers found Mr. Cossey's truck. It had been abandoned a short distance from the bank. Two footprints were found nearby, one beside the truck and one about eight feet from the truck. The officers covered the footprint nearest the truck to protect it from rain.

The next morning Charleston Police Lieutenant Robert Hearnes made a plaster cast of the footprint beside the truck. The tread was from a

Nike tennis shoe.  The cast was compared to the bottoms of Nike tennis shoes defendant was wearing when he was arrested.  Lt. Hearnes testified that the footprint appeared to have been made by a shoe the same size as those defendant was wearing.  The footprint showed the same type of tread as defendant's shoes.

\*     \*     \*

Mr. Jones' testimony included:

Q. [by the prosecuting attorney] You were already out of the truck while Clifton was still trying to get out; is that correct?
A. Yes.
Q. And what was going through your mind at that point, Larry?
A. What was going through my mind at that point? Sammy.
Q. I'm sorry?
A. Sammy.
Q. What's that?
A. Sammy Harris.  The last time the store got robbed, he didn't quite make it out that time.

Mr. Jones was then asked, "Now, tell this jury about Sammy Harris. What happened to him."  Defendant's trial attorney objected on the grounds of relevancy.  The trial court sustained the objection. Mr. Jones' testimony continued:

Q. Were you afraid?
A. Yes. Yes.
Q. And why were you afraid?
A. Afraid for my life, based on my friend.
Q. Did the--Did the man that held the shotgun on you looked [sic] like he planned to use it?
A. Yes, he did.

Defendant's trial attorney then objected to the question about whether the robber looked like he planned to use the shotgun.  The objection was overruled.

\*     \*     \*

Mr. Cossey told the jury that defendant fit the description of the robber. He explained, however, that he was "[n]ot 100 percent sure" that defendant was the robber; that the robber had a hat on; he had a stocking over his face and he had a mustache and a goatee.

Resp. Ex. 6 at 2-7.

To the above, the Court adds the following. Petitioner testified on direct examination that he had pleaded guilty to two misdemeanor offenses of assault in the third degree arising out of fights with his wife; and to one misdemeanor offense of property damage in the second degree. Resp. Ex. 2 at 253-54. During cross-examination, Petitioner volunteered the statement that the reason that he ran when the car in which he was a passenger was stopped by Officers Moody and Brown was because he was on probation and was afraid he would be put in jail; he was afraid of "having to do a year." The following exchange ensued between the prosecutor and Petitioner:

> Q.  You--Well now, that didn't seem to stop you too much in Cape Girardeau County when you were on probation and went out and committed other crimes, now; did it?
> A.  I didn't commit no crimes. That was my wife and kids.
> Q   They were committing a crime?
> A.  I didn't see that as being a crime.
> Q.  Smacking your--
> A.  You've got that wrong. You haven't got your facts right. I did not slap her.
> Q.  What--All right. What you did is--is--
> A.  Yeah. I was charged for it, you know. I admitted to it. You know, we have fights. But as far as going out, committing crimes, no. It was . . . a matter between me and my wife.
> Q.  You committed--You have pled guilty to two third degree assaults of striking your wife; is that not correct?
> A.  Yeah, I did.
> Q.  You pled guilty to that. But now you're telling this jury you didn't do it?

A.     I pled guilty to it because I didn't--I didn't want to fight it. I--

Q.     Okay. Now, you were lying to the Court when you swore to tell the truth. What are you doing now?

A.     I'm telling you what happened.

Q.     You're telling me the truth, but you were lying to Judge Kamp up in Cape Girardeau County, when you swore to tell the truth, and told him that you, indeed, did the crime that you were charged with; is that not correct?

A.     How can you say I was lying to Judge Kamp? I did not tell Judge Kamp a lie. . . . I admitted to violating the ex parte order. I was charged with this.

Q.     You were charged with two third degree assaults for assaulting Mary Hightower, and you pled guilty to that too.

A.     Yeah. I pled guilty--I pled guilty to all those charges. . . . I'm not denying that--I'm not saying that I didn't do anything to try to get out of this. I pled guilty to it.

Q.     But you're telling this jury that it was your wife and children that's all the fault of this, not you.

A.     I'm not saying that. You saying that.

Q.     That's what you just told this jury.

A.     No, I didn't. I'm not saying that. That is what you're saying. I'm not saying that.

Q.     So you're telling us, then, that the charges you were charged with were valid charges, that you didn't lie to Judge Kamp and --

At this point, defense counsel objected. The trial court responded, "All right. We've pretty much got this wore out," and the prosecutor proceeded to a different line of questioning. Id. at 273-76.

## Direct Appeal

On direct appeal, Petitioner raised the first three claims asserted in his present petition for federal habeas relief. He first argued that the State failed to establish beyond a reasonable doubt that he was the perpetrator of the crimes. Petitioner argued that the victims could not actually identify him and that the police found no physical evidence to

connect him to the crimes, other than the footprint which was inconclusive. Resp. Ex. 4 at 10-13.

Petitioner next maintained that the trial court plainly erred in permitting the prosecutor to question Jones about his feelings with regard to what had happened to Sammy Harris. Petitioner explained that Sammy Harris was the victim of a first-degree murder which occurred during a robbery of the same Town and Country grocery store in Charleston on August 22, 1990. Sammy Harris was the store manager and was shot and beaten to death by the perpetrator. Petitioner asked the appellate court to take judicial notice of its files in the case State v. Vinson, 854 S.W. 2d 615 (Mo. Ct. App. 1993), which, according to petitioner, included Sammy Harris's name as the store manager. Petitioner further explained that defense counsel, who was not local, did not understand the reference to Sammy Harris, but that the jury did and that this reference injected into the minds of the jurors irrelevant matters and played upon their fear and collective memories of the murder. Petitioner argued that the trial judge, who was also local and knew what was happening, should have stopped the prosecutor from asking about Sammy Harris. Petitioner asked for plain error review of this matter. Id. at 14-18.

Petitioner's last point on direct appeal was that his right to a fair trial was violated by the prosecutor's cross-examination of Petitioner regarding the details of Petitioner's prior convictions. Petitioner again sought plain error review of the trial court's failure to put a stop to this questioning before defense counsel finally objected. Id. at 19-23.

The Missouri Court of Appeals rejected each of these claims. The court first concluded that the evidence was sufficient to enable a reasonable juror to find Petitioner guilty of the offenses charged. Resp. Ex. 6 at 7-8. With regard to the Sammy Harris claim, the appellate court first noted that Petitioner did not object at trial to the testimony and that the matter was therefore not preserved for appellate review. The appellate court then addressed Petitioner's claim that the trial court plainly erred in allowing this testimony, as follows:

> The plain error rule does justify a review of every point that has not been properly preserved for appellate review. Mindful that an appellate court will not reverse a case based on a trial court's ruling on an evidentiary question unless there is substantial or glaring injustice, and that the meaning of matters to which Mr. Jones alluded in the challenged testimony, the occurrence involving Sammy Harris, must be found outside the record in this case, this court declines to grant plain error review.

Id. at 9-10 (internal citations omitted).

The appellate court concluded that plain error relief also was not warranted on petitioner's claim that the trial court plainly erred in not stopping the prosecutor's questioning of Petitioner about his past crimes sometime before defense counsel objected and the line of questioning ceased. The appellate court explained that it did not find that the prosecutor's questions had "a decisive effect on the jury." Id. at 12.

**State Post-conviction Proceedings**

Among the claims raised by Petitioner in his amended motion for state post-conviction relief were the two claims of ineffective assistance of counsel raises in his present habeas petition. He claimed that trial counsel rendered ineffective assistance in

10

failing to move for a change of venue to which Plaintiff was entitled as a matter of right under Missouri Rule of Criminal Procedure 32.03,[2] which resulted in the trial being held in the same small town where the crimes occurred, with venire members who knew each other, knew witnesses for the State, had favorable feelings toward the prosecutor, and/or had heard about the case, and that four of these venire members being on the jury. He also claimed that trial counsel rendered ineffective assistance in failing to move to strike these four jurors for cause or peremptorily. Resp. Ex. 10 at 17-24.

With respect to the second claim, Petitioner contended that trial counsel was ineffective in failing to remove (1) Juror Thomas due to his expressed difficulty in paying attention because he was taking medication for a cold, his statement that he had a family relationship with the manager and two other employees of the store that was robbed, and his above-quoted comments indicating an attitude favorable to the State; (2) Juror Bogle due to her expressed potential inability to pay attention because she had had a migraine the night before, and her statement that she had heard about the robbery before the trial; (3) Juror Owen who had heard about the case; and (4) Juror McClendon who knew a State's witness (Slaten). Id.

The state trial court denied Petitioner's motion for post-conviction relief without an evidentiary hearing. The court concluded that the two above claims of ineffective assistance of counsel dealt with matters of trial strategy that were "virtually

---

[2]    This rule grants criminal defendants in proceedings triable by a jury pending in a county with fewer than 75,000 inhabitants the right to a change of venue.

unchallengeable"; that counsel's decision not to move for a change of venue did not result in the denial of Petitioner's right to a fair and impartial jury; and that Petitioner failed to produce any evidence to show that Jurors Thomas, Bogle, Owens, and McClendon were biased or that there was a reasonable probability that the outcome of the trial would have been different had different jurors been selected. Resp. Ex. 13 at 45.

On appeal, Petitioner raised the above two claims of ineffective assistance of trial counsel. Resp. Ex. 14. The appellate court agreed with the lower court that Petitioner was not entitled to an evidentiary hearing on his first point because the record demonstrated that he was not prejudiced by trial counsel's failure to move for a change of venue. To reach this conclusion, the appellate court reviewed the voir dire transcript and noted the following: (1) two venirepersons (Summerfield and Housman), who did not serve on the jury, were brother/sister-in-laws; each stated that s/he could arrive at an independent decision; (2) two venirepersons (Cogdill and McClendon), who did serve on the jury, worked for the same employer and were engaged; each stated that s/he could arrive at an independent decision; and (3) six venirepersons (Whitney, Gentry, Pazdera, Ford, Housman, and Johnson) either worked for Town and Country, were related to Petitioner, or were related to or knew a witness for the State, but none of these venirepersons served on the jury. The appellate court noted that at the outset of voir dire the prosecutor announced that he did not know any of the venirepersons and when he asked the panel if anyone knew him, no one responded.

The court noted that Petitioner did not contend that he had to use a peremptory challenge against a venire member whom the trial court should have stricken for cause. Explaining that the presence of Thomas, Bogle, Owens, and McClendon would be considered in the context of Petitioner's second claim of ineffective assistance of counsel, the appellate court concluded that the record demonstrated that Petitioner was not harmed by trial counsel's failure to seek a change of venue.

With respect to Petitioner's second claim, the appellate court held that the motion court did not err in rejecting, without an evidentiary hearing, the claim with respect to McClendon, Owens, and Bogle. The appellate court pointed to McClendon's statement during voir dire that she could treat Slaten like any other witness; Owens's and Bogle's statements that they could be fair and impartial and had not made up their mind about the case; and the lack of any evidence that Bogle in fact experienced any physical discomfort during the one-day trial.

The appellate court concluded, however, that Petitioner was entitled to an evidentiary hearing on the issue of trial counsel's failure to seek to remove Thomas. The court found that "Thomas's disclosure about his relatives working at Town & Country Grocery Store, coupled with his comments about the prosecutor's pursuit of 'the Williamses for the 'Mike Ivey killing,' indicate an attitude favorable to the State . . . and the record supplies no basis for the motion court's finding that Trial Counsel's failure to challenge Thomas for cause was trial strategy." The case was remanded to the trial court with directions to hold a hearing on this matter. Id.

At the hearing, defense counsel testified that upon hearing the above-quoted exchange between the prosecutor and Thomas about the Ivey case, he assumed he would move to strike Thomas, but he changed his mind after local co-counsel told him that she had heard that Ivey's friends and family were angry at the prosecutor's office because they did not feel the office was doing enough. When questioned about whether Thomas had lied under oath when he stated that he might have positive feelings toward the prosecutor, defense counsel testified that in his experience jurors often didn't tell the truth on voir dire on some questions. He further testified that if he had it to do over again, he would seek to remove Thomas from the jury, but that at the time, based on the information provided by local co-counsel, it was decided to keep Thomas. Resp. Ex. 9.

The motion court again denied relief. The court first concluded that a basis for cause to strike Thomas was not established as "[a]t all times during voir dire questioning, juror Thomas always maintained that he could be fair and impartial." Resp. Ex. 10 at 58. The motion court then found that defense counsel did not render ineffective assistance for failing to use a peremptory strike to remove Thomas because counsel had a reasonable trial strategy for allowing Thomas to remain as a juror. The court expressly found, based upon trial counsel's testimony and the court's "observation of counsel, in conjunction with the entire record, that the decision to not use a peremptory strike on juror Thomas was a knowing and strategic choice made by experienced, well-prepared counsel, and that such action, or inaction as the case may be, was reasonable." Id. at 59. Lastly, the motion

court found that Petitioner failed to establish prejudice as a result of defense counsel's alleged error, in light of the "overwhelming evidence" of petitioner's guilt.  Id.

The Missouri Court of Appeals again reviewed Thomas's voir dire testimony and affirmed the denial of post-conviction relief, concluding that "based on the entire examination of Thomas, there is no evidence that his view of the prosecutor would prevent or substantially impair the performance of his duty as a juror."  Resp. Ex. 8.  The appellate court held that Petitioner did not prove that the failure to challenge Thomas, either for cause or peremptorily, "was not part of trial counsel's reasonable trial strategy."  The court noted that Thomas never indicated that he was specifically biased against Petitioner.  Id.

The court also held that Petitioner failed to prove that he was prejudiced by counsel's decision to leave Thomas on the jury by failing to show that "having another qualified juror" on the panel, instead of Thomas, would have made it reasonably probable that the result of the trial would have been different.  The appellate court noted that the evidence was "sufficient" for a reasonable juror to find Petitioner guilty, and held that Petitioner had not proven that Thomas "was anything but a reasonable juror."  Id.

## DISCUSSION

### Procedural Bar

Respondent argues that this Court is procedurally barred from considering Petitioner's claims regarding the prosecutor's questions about Sammy Harris and Petitioner's prior convictions because Petitioner did not object at trial to either line of

questioning and thus, did not properly preserve the claims for review by the state court of appeals.  Under the doctrine of procedural bar, a federal district court is precluded from substantively considering a habeas corpus claim that a state court disposed of on an independent and adequate state procedural ground; "[i]n other words, a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards."  Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004).

Here the Missouri Court of Appeals clearly applied an adequate and independent state procedural ground for failing to consider the merits of these two claims on direct appeal, namely, Petitioner's failure to object to the matters at trial.  In Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004) (en banc), the en banc court of the Eighth Circuit held that a claim of prosecutorial misconduct in failing to disclose favorable evidence was procedurally defaulted, notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error after concluding that the issue had not been raised at trial.  Evans did not mention what has been identified as a decisional split in the Eighth Circuit on whether plain error review by a state appellate court waives a procedural default by a habeas petitioner.  See, e.g., Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996).   Nevertheless, this Court is bound by the Eighth Circuit's en banc approach to this question adopted in Evans.  Indeed, in Clemons, 381 F.3d at 750, decided after Evans, the Eighth Circuit held that the federal habeas court was barred from considering the merits of jury selection claims not objected to at trial where the Missouri Supreme Court held

that the claims were not properly preserved on direct appeal and did not warrant plain error relief.

Petitioner here has asserted no cause for his procedural default, nor has he shown that failure to review these two claims would result in actual prejudice, or that he is actually innocent. The Court notes that ineffective assistance of trial counsel cannot serve as cause excusing a procedural default unless such an ineffective assistance claim was properly raised in state court. Edwards, 529 U.S. 446, 451-52 (2000); Williams v. Kemna, 311 F.3d 895, 897 (8th Cir. 2002). Here Petitioner did not do so. Accordingly, the Court concludes that it is procedurally barred from considering the merits of Claims 2 and 3 of the present habeas petition. The Court proceeds to consider the merits of Petitioner's remaining claims.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a federal habeas claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived "'at a conclusion opposite to that reached by [the Supreme Court] on a question of law'" or "'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent'" but arrives at the opposite result.  Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)).  A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413; Linehan v. Milczark, 315 F.3d 920, 924 (8th Cir. 2003).

A case cannot be overturned merely because it incorrectly applies federal law; the application must also be "unreasonable."  Williams, 529 U.S. at 411; Colvin v. Taylor, 324 F.3d 583, 587 (8th Cir. 2003) (under AEDPA, a writ of habeas corpus may not be granted "unless the relevant state court decision is both wrong and unreasonable").  The factual findings of the state court are subject to "an even more deferential review.  Factual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only by 'clear and convincing evidence.'"  Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001) (quoting § 2254(e)(1)).

**Sufficiency of the Evidence**

The due process clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  In the § 2254 setting, the federal court must consider "whether, after viewing the evidence in the light most favorable to the

prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Evans v. Luebbers</u> 371 F.3d 438, 441 (8th Cir. 2004) (en banc) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979)). The petitioner is entitled to habeas corpus relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Id.</u>

Here there is little doubt that the decision of the Missouri Court of Appeals that there was sufficient evidence to support Petitioner's convictions did not involve an unreasonable application of federal law or an unreasonable determination of the facts as presented at trial. As that court noted, the State presented evidence that Petitioner fit the description of the robber; that Petitioner ran from the car when stopped by the police; that when Petitioner fell his hat came off and shortly thereafter approximately $1,900 was found in the hat in bundles of $5's, $10's, and $20's, which matched how the stolen money was bundled; that the total amount of cash recovered from Petitioner and his companion corresponded with the estimated amount of cash taken in the robbery; and that when he was arrested, Petitioner was wearing shoes that were the same size and had the same type of tread on the soles as the footprint found alongside the truck that the robbers took from the robbery scene. It was not unreasonable for the state appellate court to conclude that this evidence was sufficient to have enabled a reasonable jury to find petitioner guilty beyond a reasonable doubt of the charged offenses. Petitioner's first ground for habeas relief is thus, without merit.

**Ineffective Assistance of Counsel**

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial and direct appeal counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). To succeed on a claim of ineffective assistance of trial counsel, a habeas petitioner must establish both that counsel's representation fell below an objective standard of reasonableness, and that but for counsel's deficiency there is a reasonable probability that the result of the trial would have been different. <u>Id.</u> at 688. There is a strong presumption that counsel's performance fell "within the wide range of professional assistance." <u>Odem v. Hopkins</u>, 382 F3d. 846, 850 (8th Cir. 2004) (quoting <u>Strickland</u>, 466 U.S. at 689).

Error by counsel, even if professionally unreasonable, does not necessarily require that a judgment be set aside. "[A] defendant must affirmatively show prejudice. It is not sufficient for a defendant to show that the error had some 'conceivable effect' on the result of the proceeding . . . . The defendant must show that because of counsel's error, there is a reasonable probability that the result of the proceeding would have been different." <u>Id.</u> When considering the adequacy of counsel's performance, a federal habeas court must be "highly deferential" and make "every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." <u>Strickland</u>, 466 U.S. at 697. In the context of a § 2254 petition, a petitioner must show that the state courts applied <u>Strickland</u> to the facts of his case in an objectively

unreasonable manner.  <u>Underdahl v. Carlson</u>, 381 F.3d 740, 742 (8th Cir. 2004) (quoted case omitted).

Petitioner's two claims of ineffective assistance of trial counsel are related.  He claims that counsel rendered ineffective assistance in failing to move for a change of venue to which Plaintiff was entitled as a matter of right, resulting in Petitioner being tried before jurors who knew each other, knew witnesses for the State, had favorable feelings toward the prosecutor, and had heard about the case.  Petitioner also claims that counsel was constitutionally ineffective in failing to challenge for cause or peremptorily four jurors who expressed a potential inability to pay attention, were related to employees of the store that was robbed, indicated an attitude favorable to the State, had heard about the case, and/or knew a State's witness.

The constitutional principles governing both of these claims derive from the Fourteenth Amendment's due process clause, which "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."  <u>Irvin v. Dowd</u>,  366 U.S. 717, 722 (1961) (citation omitted) (trial court's failure to grant a change of venue warranted habeas relief where impartiality of jurors due to a pattern of deep and bitter prejudice throughout the community was shown).  The Supreme Court explained that it is not required "that jurors be totally ignorant of the facts and issues involved. . . .  It is sufficient if the juror can lay aside his impression or opinion [as to the defendant's guilt] and render a verdict based on the evidence presented in court."  <u>Id.</u> at 722-73.  The test of a juror's impartiality is

"whether the nature and strength of the opinion formed are such as in law necessarily raise the presumption of partiality." Id. at 723 (citation omitted).

To establish ineffective assistance based upon counsel's failure to request a change of venue, a habeas petitioner must show not only that the trial court would have granted a change of venue, but also actual or presumed prejudice on the part of jurors. Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000). Actual prejudice requires a showing that one or more jurors believed before trial that the petitioner was guilty and that they could not set these pre-formed opinions aside at trial. Presumed prejudice requires showing that an irrepressibly hostile attitude pervaded the community. Id. Simply showing that all the potential jurors knew about the case and that there was extensive pretrial publicity will not suffice to demonstrate that an irrepressibly hostile attitude pervaded the community.

For similar reasons, "[A]bsent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel." Johnson v. Armontrout, 961 F.2d 748, 755-56 (8th Cir. 1992); see also Tafoya v. Tansy, 2001 WL 557971, at *6 (10th Cir. May 24, 2001); Hale v. Gibson, 227 F.3d 1298, 1319 (10th Cir. 2000). As in the context of the change-of-venue issue, to show that a juror was biased, a habeas petitioner must show that the juror had such a fixed opinion that he or she could not judge impartially. Hale, 227 F.3d at 1320.

Here, Petitioner's suggestions of presumed prejudice do not approach the high standard necessary to find a constitutional violation due to counsel's failure to request a change of venue. He presented no evidence of "continued adverse publicity [which] caused

a sustained excitement and fostered a strong prejudice among the people of [the county in which he was tried]," as did the petitioner in Irvin, 366 U.S. at 725-27.  See also Rideau v. Louisiana, 373 U.S. 723, (1963) (finding presumed juror prejudice where the petitioner's 20-minute videotaped confession to the robbery, kidnaping, and murder at issue was broadcast three times to tens of thousands of people in a community of 150,000). Furthermore, this Court's review of the voir dire testimony does not reveal any "pattern of deep and bitter prejudice" against Petitioner, as was found in Irvin and served as the basis for habeas relief.  See Irvin, 366 U.S. at 727.

Nor has Petitioner shown actual prejudice on the part of any juror except possibly Thomas.  The state appellate court properly independently evaluated the voir dire testimony of the impaneled jurors, see Irvin, 366 F.3d at 723, and this Court concludes that the state courts' rejection of Petitioner's ineffective assistance of counsel claims with regard to Jurors Bogle, Owen, and McClendon was not contrary to and did not involve an unreasonable application of clearly established Federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. See Meeks, 216 F.3d at 967-68 (rejecting ineffective assistance claim based on counsel's failure to request a change of venue where the petitioner failed to establish either actual or presumed juror prejudice); Hale, 227 F.3d at 1320 (holding that counsel was not ineffective for failing to try to remove a juror who read a newspaper article regarding the petitioner and who knew the grandparents of one of the victims, and a juror who indicated she was

relieved when she heard that the alleged perpetrator of the crimes had been apprehended, where these jurors stated they could be impartial despite these alleged biases).

With respect to Thomas, the state courts acknowledged that this juror expressed a bias in favor of the prosecution due to the prosecution of the murderers of Thomas's friend. As noted above, the state courts credited trial counsel's testimony at the post-conviction hearing that he decided not to seek Thomas's removal from the venirepanel as a matter of trial strategy. This strategy, based upon co-counsel's suggestion that people were, in fact, angry with the prosecutor's office with regard to the murder case, was found by the state courts to be reasonable.

Federal habeas courts have "no license to redetermine the credibility of witnesses" who testified at a post-conviction hearing, whose demeanor has been observed by the state trial court." Perry v. Kemna, 356 F.3d 880, 885 (8th Cir. 2004) (en banc). Nevertheless, this Court is somewhat troubled by the finding that counsel's expressed strategy was reasonable, as the finding is dependent upon a belief that Thomas was not being truthful during voir dire. Additionally, the state courts' findings of no prejudice in light of the evidence of Petitioner's guilt are not relevant, because the Eighth Circuit has held in this context that the failure of counsel to remove an unqualified juror results in a "structural defect" not subject to harmless error analysis. See Johnson, 961 F.2d at 756.

Upon review of the record, however, the Court concludes that the holding of the Missouri Court of Appeals that Petitioner failed to establish that Thomas was not a qualified juror was not legally or factually unreasonable. As the state appellate court noted,

the bias expressed by Thomas was not against Petitioner, but rather favorable to the prosecution in connection with a different case. Thus, this case does not present an issue of bias as in Johnson, 961 F.2d at 752, where "recycled" jurors in the petitioner's case heard damaging testimony about the petitioner when sitting as jurors in the prior trial of a co-defendant. More importantly, Thomas affirmatively stated that he had not made up his mind about the present case and that he was "pretty sure" he could make a decision based upon the evidence presented at trial. Resp. Ex. 1 at 62. Under these circumstances, the Court concludes that Petitioner's claim of ineffective assistance of counsel for failing to seek Thomas's removal from the also jury does not warrant habeas relief.

## CONCLUSION

The Court concludes that petitioner is not entitled to habeas relief. The Court does not believe that "reasonable jurists" might find the Court's assessment of the procedural and substantive issues raised in this action "debatable or wrong," for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (standard) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the petition of Harry Hightower for habeas corpus relief be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability should not issue in this case.

The parties are advised that they have ten (10) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that the failure to file timely objections may result in a waiver of the right to appeal questions of fact.

AUDREY FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of February, 2005.